# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

CARMEN T. BARRAGAN *aka*
CARMEN T. JIMENEZ-BARRAGAN,

    Plaintiff,

vs.

TYSON FOODS, INC., and
TYSON FRESH MEATS, INC.,

    Defendants.

No. C06-4037-DEO

**ORDER ON DEFENDANTS'
MOTION TO STRIKE PLAINTIFF'S
SECOND DESIGNATION OF
EXPERT WITNESSES**

_____

In this action, the plaintiff claims the defendants interfered with her rights under the Family Medical Leave Act (the "FMLA"),[1] resulting in the termination of her employment with the defendants. *See* Complaint, Doc No. 2. The case is scheduled for jury trial, to commence June 9, 2008, before the Honorable Donald E. O'Brien.

On March 17, 2008, the defendants filed a motion to strike the plaintiff's second designation of expert witnesses. Doc. No. 59. The plaintiff resisted the motion on April 3, 2008. Doc. No. 61. The defendants filed a reply brief on April 11, 2008. Doc. No. 62. The motion now is fully submitted, and the court is prepared to rule on the motion.

The plaintiff worked for the defendants until April 20, 2004, when she was terminated for excessive absenteeism. The plaintiff alleges she was absent from work because she was caring for her sick child. Doc. No. 15, ¶¶ 6-11. She argues she was entitled to leave under the FMLA, and it therefore was unlawful for the defendants to terminate her based on these absences. Doc. No. 15-2, pp. 7-8. The defendants respond,

---

[1] The plaintiff also claims she was terminated because of her race and in retaliation for filing FMLA and worker's compensation claims.

*inter alia*, that the plaintiff did not provide them with timely notice that her child had a serious health condition entitling her to FMLA leave.

On May 9, 2007, the plaintiff filed a motion for partial summary judgment on her FMLA interference claim against the defendants. Doc. No. 15. On the same day, the defendants filed a motion for summary judgment seeking dismissal of all of the plaintiff's claims, including her FMLA interference claim. Doc. No. 16. On February 22, 2008, Judge O'Brien granted the defendants' motion for summary judgment on the plaintiff's race discrimination claim and her worker's compensation and FMLA retaliation claims.[2] Doc. No. 58. However, he denied the parties' motions for summary judgment on the plaintiff's FMLA interference claim, holding there are materials issues of fact for trial.

In the motion now before the court, Doc. No. 59, the defendants ask that the plaintiff's expert witness designations of Jacqueline Van Ahn, Justine Morton, and Dr. Janet Graeve be stricken. The court will consider the motion with respect to the designation for each of the proposed witnesses.

## *Jacqueline Van Ahn*

Ms. Van Ahn operates a part-time human resources consulting business out of her home. Most of her work involves writing customized employee handbooks, but she also helps customers write job descriptions and hire employees. She has an undergraduate degree in art, and a masters degree in education. In her business, she has little involvement with the FMLA, but from 1981 to 2002, she was head of a Human Resources ("HR") department at a large company, overseeing a department of fourteen employees with a budget of more than a million dollars, where she had routine contact with the operations of the FMLA.

---

[2]The plaintiff did not resist the motion with respect to her race discrimination and worker's compensation retaliation claims.

Before rendering her opinions in this case, Ms. Van Ahn reviewed the pleadings; some of the discovery, including the plaintiff's deposition; and the medical records of the plaintiff's child. On November 1, 2007, Ms. Van Ahn prepared a report setting out her opinions. App. pp. 78-82. The report was served on the defendants as part of the plaintiff's expert witness designation.

Ms. Van Ahn divided her research into three areas: (1) the plaintiff's job search after she was terminated by the defendants; (2) the defendants' application of the FMLA; and (3) the defendants' "absence calculations" that led to the plaintiff's termination. App. 78-79. The defendants have not objected to her opinions concerning the plaintiff's job search, so the motion to strike the designation on that subject is **denied**.

On the other two topics, Ms. Van Ahn reached the following conclusions:

- The Defendant failed to follow generally accepted HR practices when it assessed points[3] to Ms. Barragan when she was absent to care for a seriously ill child.
- The Defendant failed to follow generally accepted HR practices when it terminated Ms. Barragan for absences.
- The Defendant failed to follow generally accepted HR practices by having a policy that assessed points to an emplyee who exercised FMLA rights.

App. p. 82.

Regarding the defendants' HR practices, Ms. Van Ahn stated the following in her report:

> Under HR principles, it is the employer's responsibility to provide FMLA paperwork based on comments the employee makes. If an employee says he/she has an ill child and will be missing work, the employer/HR department must provide the paperwork so it can be taken to the physician. In this case it would be even better if a translator could have given out the

---

[3]The defendants enforce an attendance policy that assesses attendance points if an employee is late or absent from work without an excuse. Doc. No. 58, p. 3. Under the policy, no points are to be assessed for absences covered by the FMLA. *Id.*, p. 4.

> paperwork and explained what was needed. There is also no record that any information was provided in Spanish.
>
> The Defendant had a doctor's note from Dr. Timothy Daniels on 2/19/04 that said the child was ill and that the mother should stay with him, another indication to the HR Department of the need to provide FMLA paperwork.
>
> As an HR professional it is confusing and puzzling why the HR department did not provide FMLA certification paperwork as it is clear Ms. Barragan went out of her way to alert her supervisors to the fact that her child was very ill.

App. pp. 80-81.

Ms. Van Ahn also was highly critical of the "absence calculations" by the defendants that resulted in the plaintiff's termination, stating as follows: "If the Defendant has a point system whereby employees are assessed points for absenteeism, this method of discipline is not explained anywhere in the information provided." App. p. 82.

The defendants ask the court to strike the designation of Ms. Van Ahn's testimony relating to the plaintiff's FMLA interference claim because it would consist of "impermissible legal conclusions," and because Ms. Van Ahn is "singularly unqualified to provide such legal conclusions." Doc. No. 59-2, p. 2. The court finds that based on her background and experience, Ms. Van Ahn is qualified to testify concerning the operations of the FMLA, but the court agrees that the testimony proffered by Ms. Van Ahn on this subject would be problematic.

To be admissible, evidence must be relevant. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible"). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. The first question here is whether Ms. Van Ahn's opinions would be relevant to any issue presented in this case.

4

To prove her FMLA interference claim, the plaintiff must establish that (1) she was eligible for leave; (2) her child was suffering from a serious health condition; (3) she was needed to care for her child; (4) she was absent from work to care for her child; (5) she gave the defendants appropriate notice of her need to be absent from work; (6) she was discharged from her employment by the defendants; and (7) her absence from work was a motivating factor in the defendants' decision to discharge her. *See* Eighth Circuit Model Instruction 5.81B. Ms. Van Ahn's proposed testimony about "generally accepted HR practices" would not make any of these matters more or less probable.

The plaintiff argues that evidence showing the defendants "failed to follow proper Human Resources principles in administering employee benefits for the FMLA is probative in establishing the employer may have inadvertently and/or intentionally violated the FMLA." Doc. No. 61-2, p. 4. This argument is advanced without citation to any supporting authority, and it begs the question. It is not relevant in this case whether, if the defendants violated the FMLA, they did so inadvertently or intentionally – they would be liable in either situation. The jury will not be asked to determine whether the defendants acted "inadvertently and/or intentionally," and evidence on this subject would not make anything the jury *will* be asked to decide more or less probable.[4]

Looking at the issue from another direction, the plaintiff certainly would not be agreeable to testimony by a defense expert that the defendants employ superior HR practices. A "battle of experts" on this subject would not only be a waste of time, it also likely would confuse the jury about what the real issues are in the case. For all of these reasons, the designation of this testimony should not be permitted.

---

[4]To the extent the plaintiff is arguing that because the defendants did not follow proper HR principles, they are more likely to have violated the FMLA, such evidence would be inadmissible under Federal Rule of Evidence 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion.").

To the extent Ms. Van Ahn's testimony would be directed at explaining how the legal requirements of the FMLA should be interpreted or applied to the facts of this case (for example, testimony concerning an employer's responsibilities under the FMLA, or the appropriateness of the notice given by the plaintiff to the defendants under the FMLA), it also would be inadmissible as a legal opinion on an issue of law to be decided by the court. Testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988).

Federal Rule of Evidence 702 provides for the liberal admission of expert testimony regarding factual matters. The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial judge is charged with a gate-keeping responsibility to ensure all expert testimony or evidence admitted at trial is relevant, reliable, and "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993).

Expert testimony is admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact. *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988). However, "resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.*, 858 F.2d at 497. Accordingly, federal courts typically prohibit expert witnesses from interpreting the law for the court or from

advising the court about how the law should apply to the facts of a particular case. Numerous examples exist of how the courts have applied this prohibition.

In *Estes v. Moore*, 993 F.2d 161 (8th Cir. 1993), the court upheld a district court ruling precluding an expert from testifying as to the existence of probable cause. The court held as follows:

> The district court sustained an objection to allowing Estes's expert to testify as to whether probable cause for the arrest existed. Estes argues that the district court could not exclude the expert testimony just because it went to the ultimate issue in the case. *See* Fed. R. Evid. 704(a). Expert opinion testimony is only admissible if it "assists the trier of fact to understand the evidence or determine a fact in issue." *See* Fed. R. Evid. 702. While the existence of probable cause is a mixed question of law and fact, the ultimate conclusion is a question of law. *United States v. Campbell*, 843 F.2d 1089, 1092 (8th Cir. 1988). The proposed testimony was, therefore, not opinion testimony but rather it was a statement of a legal conclusion. *See Kostelecky v. NL Acme Tool/NL Indus. Inc.*, 837 F.2d 828, 830-31 (8th Cir. 1988).

*Estes*. 993 F.2d at 163.

In *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995), the court ruled the trial court committed reversible error by admitting expert opinion testimony that police officers had acted "reasonably" in a Fourth Amendment context. "Over the course of his testimony, [the expert] set forth his opinion as to why each action the officers took was consistent with 'nationally accepted standards.'" *Peterson*, 60 F.3d at 475. Citing *Estes*, the court held, "[T]he only disputed issues at trial involved whether the officers actually had probable cause and whether, under qualified immunity analysis, they could reasonably believe they had probable cause. Both probable cause and qualified immunity are ultimately questions of law." *Id*. The court further held, "[The expert's] testimony was not a fact-based opinion, but a statement of legal conclusion. . . . The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony." *Id*. *See*

*also Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible. . . . Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them.").

Virtually every circuit court that has addressed this question has agreed with the holdings in *Estes* and *Peterson*. *See, e.g., In re Initial Public Offering Sec. Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law."); *Nieves-Villanueva v Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule.").

Federal Rule of Evidence 704(a), which removes the common law bar on "otherwise admissible" testimony that "embraces an ultimate issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. The common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the "ultimate issue" in the case because this was thought to invade the province of the jury. The abolition in Rule 704(a) of this "ultimate issue" rule allows the expert witness to offer his or her factual conclusion in order to aid the jury, which can choose to accept or reject it. However, questions of law are not "to be decided by the trier of fact"; rather, it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issues. The abolition of the "bar on 'ultimate issue' opinions . . . is not a carte blanche for experts." *Dinco v. Dylex, Ltd.*, 111 F.3d 964, 973 (1st Cir. 1997). *See Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (9th Cir. 1983) (Rule 704 is not "intended to allow a witness to give legal conclusions").

The plaintiff contends Ms. Van Ahn is not expressing "legal" opinions, but instead is opining "about the proper Human Resources standards for administering employee leave and . . . addressing the facts to be applied to the legal standard." Doc. No. 61-2, p. 5. The plaintiff argues, "there is a difference between the legal standards and the procedures of a community of professionals," such as HR professionals. *Id*.

The plaintiff is correct that "industry practice or standards may often be relevant . . ., and expert or fact testimony on what these are is often admissible." *Southern Pine Helicopters, Inc.*, 320 F.3d at 841. However, the question here is not what the industry practice or standards are, but whether the defendants violated the plaintiff's rights under the FMLA. Evidence that the defendant did not have procedures in place that might have prevented the alleged FMLA violation does not help the plaintiff's case. "Industry practice or standards" simply are not relevant.

The proffered testimony of Ms. Van Ahn on this question consists of nothing more than statements that the defendants' practices did not comply with the requirements of the FMLA, and these statements are comprised of nothing more that inadmissible legal conclusions. Instructions on the law that should be applied in this case will be given to the jury by Judge O'Brien. Ms. Van Ahn's testimony on this subject would not be helpful. In fact, to the extent her testimony is inconsistent with Judge O'Brien's instructions, it likely would confuse the jury about what it is supposed to decide in this case. As the Fourth Circuit Court of Appeals observed in *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002):

> "The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness. . . . The testimony supplies the jury with no information other than the witness's view of how the verdict should read." The role of the district court, therefore, is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion.

*Id.*, 286 F.3d at 760 (quoting Weinstein's Federal Evidence § 704.04 [2][a] (2d ed. 2001)).

The trial judge in this case is fully capable of deciding legal issues relating to the FMLA and its application, and instructing the jury on these issues as necessary. The opinions of Ms. Van Ahn simply would not be helpful to the fact-finder in this case.

Accordingly, the motion to strike the designation of Ms. Van Ahn's remaining testimony is **granted**.

### *Justine Morton*

Ms. Morton operates a Human Resources consulting business. She has thirty years of professional Human Resources experience. She has an undergraduate degree in psychology and sociology, and a master's degree in public administration, focusing on Human Resources management. Before rendering her opinions in this case, Ms. Morton reviewed the pleadings; some of the discovery, including the plaintiff's deposition; and the medical records of the plaintiff's child. On November 1, 2007, Ms. Morton prepared a report setting out her opinions. App. pp. 88-93. The report was served on the defendants as part of the plaintiff's expert witness designation.

Ms. Morton expressed opinions on two issues: (1) proper HR standards for administration of the FMLA, and (2) the plaintiff's job search. App. pp. 88, 91. The defendants have not objected to her opinions concerning the plaintiff's job search, so the motion to strike the designation on that subject is **denied**.

Before addressing FMLA issues in the case, Ms. Morton reviewed the plaintiff's attendance history and then summarized the defendants' "Rules of Conduct." From her review of these documents, she determined that the plaintiff should have been eligible for five more weeks of leave at the time of her discharge. App. p. 89. The court can discern no meaningful challenge to this testimony by the defendants. Therefore, the defendants'

10

motion to strike also is **denied** as to this testimony. If the defendants wish to challenge this testimony, they can do so on cross-examination or with other evidence.[5]

Ms. Morton reaches the following additional conclusions:

> In reviewing Ms. Barragan's testimony, Ms. Barragan provided her employer with notice that would be sufficient for a reasonable Human Resources manager or personnel to understand, or at the very least question, whether her child suffered from a serious health condition. Human Resources professionals understand that employees reporting medical conditions do not necessarily mention the FMLA or say things like "serious health condition." However, a Human Resources person would understand that any three day period of absences, full or partial, could give rise to a question of a serious health condition and would pursue that avenue with the employee.
>
> The information I reviewed demonstrate[s] that Ms. Barragan provided her employer with adequate documentation of her visits with the health care provider with her child so that a Human Resources professional would understand issues with the FMLA might come into play. Based on the "comment: child or Mon/Child" and the corresponding doctor's notes, it is my opinion that Ms. Barragan provided her employer sufficient information that human resources personnel following acceptable human resources standards would have sufficient notice of Barragan's potential need for FMLA leave. Thereby, advising her of FMLA rights and providing her an FMLA certification form for the medical provider to fill out.
>
> \* \* \*

---

[5]"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995). "An expert's opinion must be excluded only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 356 F.3d 850, 858 (8th Cir. 2004).

My experience in human resources demonstrates that supervisors are trained concerning the specifics of the FMLA and aware of which situations would give rise to FMLA potential eligibility. After being informed of Ms. Barragan's child's health condition, her supervisor would have informed the human resources department about Ms. Barragan's potential eligibility for FMLA

Human Resources principles/standards demonstrate the HR staff should provide an employee with a request for doctor's medical certification anytime there is the potential for an FMLA qualifying event or illness. The HR staff should have requested Ms. Barragan to provide a doctor's medical certification concerning her child's condition and the potential need for FMLA leave in order to care for the child. If the certification verified a serious health condition and the need for FMLA leave then a Human Resources professional would know that Ms. Barragan's absence[s] were FMLA leave. Human Resources principles explain that any such FMLA leave would then be applied retro-active back to the first qualifying incident.

* * *

Overall, there were several items that seem to be missing concerning Ms. Barragan's attendance points and her FMLA leave. In my experience, human resource staff should inform Ms. Barragan of her rights under FMLA leave whenever it seemed possible that FMLA leave might apply. This would be especially true of the situation when Barragan informed them of her child's illness. A Human Resources professional would have asked for a doctor's certification attesting to the health condition of her child and her need for leave. In Human Resources practice Tyson should have trained Barragan's supervisor on how to document "leave" related absences on her calendar card reporting sheet or payroll sheet. Steps in the company's progressive discipline policy would have been initiated for those absences that were assigned points.

The standard practice in Human Resources is for the staff to ensure that all actions are in accordance with proper leave

> policy and verify each absence to ensure FMLA does not apply. It does not appear that due diligence was performed in accordance with Human Resources principles in terminating Ms. Barragan.

App. pp. 89-91.

As discussed above in relation to the designation of Ms. Van Ahn, all of Ms. Morton's opinions quoted above either are not relevant, represent improper opinion testimony on legal issues, or both. Her opinions on these matters are largely cumulative of Ms. Van Ahn's opinions, and should be stricken, consistent with the court's analysis above as to Ms. Van Ahn's opinions. Therefore, the defendants' motion is **granted** as to this testimony.

### *Dr. Janet Graeve*

Dr. Graeve is a pediatrician. She did not treat the plaintiff's child, but was retained to review his medical records and give opinions for purposes of this case. According to the designation, Dr. Graeve would testify about "her experience and expertise as a pediatrician treating children, the medical condition of the Plaintiff's child. . . , and certification that could and would be made for the Plaintiff by a physician as to FMLA and Carman Barragan to be absent from work." App. p. 45-46.

In a report dated November 1, 2007, Dr. Graeve stated her opinions and the bases for those opinions. App. pp. 66-67. Before reaching her opinions, she reviewed the plaintiff's attendance calendar, medical records of the child, a leave of absence application, and some interrogatories. App. p. 66. She stated the child was less than one year old at the time of the occurrences in this case, and as such, had a very vulnerable immune system. His condition required extra attendant care and "almost constant parental supervision to avoid serious complications that may lead to death." *Id*. She concluded from the medical records that the child suffered from "childhood asthma or reactive airway

disease," which she characterized as "a medically chronic condition requiring periodic visits to health care providers." This condition also requires a regimen of continuing treatment. She opined that the child was incapacitated at one pont in time for a period of more than three consecutive days, during which time a parent or other adult needed to attend to the child's needs. *Id*. In the final paragraph of her report, she stated the following: "If I had been asked to certify this condition, through a doctor's certification from, as a serious health condition under the FMLA then I would have so certified. In my opinion a physician in the State of Iowa and familiar with the records in this case would also have filled out the certification in a similar manner." *Id*.

The defendants object to this designation, arguing Dr. Graeve's proposed testimony is a legal determination, and not a proper subject for expert testimony. They cite *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000), in support of their assertion that determining whether an employee suffers from a "serious health condition" for FMLA purposes is an "objective test to be determined as a matter of law based on the evaluation of the material facts." Doc. No. 59-2, p. 5. Actually, the court in *Thorson* held as follows:

> Having considered the issue, we conclude that this is one of those ubiquitous mixed questions of fact and law. As we noted above, the regulations implementing the FMLA (as relevant here) set out an objective test for a FMLA 'serious health condition.' It is for the fact-finder to look at the record and decide if the evidence supports the elements of that test. Once the fact-finder has affirmatively found the necessary facts, the conclusion that a plaintiff had a 'serious health condition' is inescapable as a matter of law.

*Id*.

The defendants mischaracterize Dr. Graeve's proposed testimony. In most of her report, she gives straightforward opinions concerning the child's medical condition and the requirements of care for the child. Then, as the conclusion of her opinion, she states that

based on her review of the records, she would, if requested, have certified the child's condition as a serious health condition under the FMLA. While this last opinion is close to the line, the court does not believe it would detract from the respective roles of the judge and jury at trial. The motion to strike the designation of Dr. Graeve's testimony is **denied**.

## CONCLUSION

For the reasons discussed above, the defendants' motion to strike is **granted in part and denied in part**, as follows:

Ms. Van Ahn's testimony regarding the plaintiff's job search after her termination by the defendants is allowed. Ms. Van Ahn's remaining opinion testimony is stricken.

Ms. Morton's testimony regarding the plaintiff's job search after her termination, and her calculation of the plaintiff's leave time, is allowed. The remainder of Ms. Morton's opinions testimony is stricken.

Dr. Graeve's testimony is allowed.

**IT IS SO ORDERED.**

**DATED** this 17th day of April, 2008.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT